# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN COPELAND, ) | |
| ) | Case No. 18-cv-3780 |
| Plaintiff, ) | |
| ) | Judge Robert M. Dow, Jr. |
| v. ) | |
| ) | |
| LIEUTENANT LEONARD JOHNSON ) | |
| and THE CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

For the second time in recent weeks, the Court has before it a lawsuit brought under 42 U.S.C. § 1983 involving the use of force by an officer of the Chicago Police or Fire Department on a trainee or a subordinate. Both cases present the question of whether the application of force was inflicted by an individual acting under color of state law, which might be actionable in federal court under the federal civil rights laws, or instead constituted a battery actionable only in state court. In the prior case, *Ploski v. Medenica*, 2019 WL 4014193, at *3-*6 (N.D. Ill. Aug. 26, 2019), this Court concluded at the summary judgment stage that the defendant was entitled to qualified immunity on Plaintiff's only federal claim of excessive force. Here, at a much earlier stage of the case and with no qualified immunity issue raised in Defendants' motions to dismiss, the Court denies Defendant Johnson's motion to dismiss [38]; grants in part and denies in part the motion to dismiss [39] filed by the City of Chicago; and denies the motion to bifurcate [40] as moot. This case is set for further status hearing set for October 15, 2019 at 9:00 a.m. The Court directs counsel to file a joint status report, including a proposed discovery plan, no later than October 11, 2019.

I.  **Background**

Plaintiff John Copeland brings this civil action under 42 U.S.C. § 1983 against Defendant Lt. Leonard Johnson and the City of Chicago (hereinafter, the "City"). Plaintiff is a firefighter for the City. [36 (Am. Compl.), at ¶ 5.] Lt. Johnson was at all relevant times a firefighter employed by the City. [*Id*. at ¶ 3.] On or about March 25, 2018, Plaintiff and Lt. Johnson were on the scene of a fire in connection with their duties as firefighters for the Chicago Fire Department ("CFD"). [*Id*. at ¶¶ 6-7.] Although Plaintiff was to remain outside the burning building on standby duty, Lt. Johnson ordered Plaintiff to enter the burning building. [*Id*. at ¶¶ 8-13.] Plaintiff was required to follow the orders given to him by Lt. Johnson. [*Id*. at ¶ 10.] Following this order by Lt. Johnson, Plaintiff entered the burning building. [*Id*. at ¶ 13.]

On or about March 28, 2018, Plaintiff and Lt. Johnson both attended a mandatory meeting at CFD Engine #121 (located at 1742 95th Street, Chicago, Illinois) to discuss the March 25, 2018 fire. [*Id*. at ¶¶ 14-24.] At the meeting, Capt. Darryl Moore asked Plaintiff to identify his role in the March 25, 2018 fire. [*Id*. at ¶ 25.] Plaintiff responded that he was on standby duty. [*Id*. at ¶ 26.] Capt. Moore then asked Plaintiff why he entered the burning building. [*Id*. at ¶ 27.] Plaintiff explained that he was ordered to enter the burning building by Lt. Johnson. [*Id*. at ¶ 28.] Plaintiff then stated to Capt. Moore: "Maybe your lieutenant didn't know his role at the fire." [*Id*. at ¶ 29.]

Following this comment, Lt. Johnson confronted Plaintiff and stated: "Since I don't know my role, make sure you know your role." [*Id*. at ¶¶ 30-31.] Lt. Johnson then punched Plaintiff in the face two times. [*Id*. at ¶¶ 32-41.] After Lt. Johnson punched Plaintiff in the face a second time, Plaintiff fell to the ground and lost consciousness after hitting his head. [*Id*. at ¶¶ 46-49.] Plaintiff spent six hours in the hospital and suffered injuries to his left eye, lip, head, and back as

a result of the actions of Lt. Johnson. [*Id*. at ¶¶ 50-51.] Lt. Johnson was Plaintiff's superior officer at the Match 25, 2018 fire and at the March 28, 2018 meeting. [*Id*. at ¶¶ 52-53.]

Plaintiff alleges that Lt. Johnson punched Plaintiff to enforce the rules of the CFD relative to the chain of command. [36 (Am. Compl.), at ¶ 57.] Plaintiff further alleges that Lt. Johnson punched Plaintiff to enforce the rules of the CFD relative to how a subordinate should report a protocol violation to a superior officer. [*Id*. at ¶ 58.] Finally, Plaintiff alleges that the "code of silence" in the CFD is a method of preventing firefighters from reporting the misconduct of their coworkers to their superiors. [*Id*. at ¶ 59.]

Plaintiff alleges that it is the custom, practice, and/or policy of CFD personnel to: (1) generate false documentation to cover-up misconduct of fellow CFD personnel; (2) fabricate documents concerning acts of misconduct that have occurred by fellow firefighters; (3) engage in acts of sexual misconduct; (4) engage in the excessive use of force; (5) fail properly to discipline CFD personnel who have committed acts of sexual misconduct and/or excessive use of force; (6) fail to properly discipline CFD personnel who have committed acts of sexual misconduct and/or excessive use of force; (7) fail to properly investigate complaints; (8) fail to properly discipline CFD personnel who have committed acts of sexual misconduct and/or excessive use of force; (9) allow misconduct to occur in various types and severity such that CFD personnel believe that they can engage in sexual misconduct and/or excessive force without repercussions and/or significant repercussions; (10) fail to provide adequate sanctions/discipline to CFD personnel who commit acts of sexual misconduct and/or excessive force; and (11) fail to provide adequate sanctions/discipline to CFD personnel who commit acts of sexual misconduct and/or excessive force. [*Id*. at ¶ 60.] However, Plaintiff fails to allege any factual support for many of these assertions. Plaintiff further alleges that a code of silence exists among CFD personnel. [*Id*. at

3

¶ 61.] According to Plaintiff, this code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct) and contributes to the generation of secrets in the CFD regarding misconduct. [*Id*.]

Plaintiff does identify examples of conduct that—according to Plaintiff—show that it is the practice or custom of the CFD to inadequately discipline its employees for misconduct. Specifically, the complaint identifies the following:[1]

- A firefighter who was promoted after committing a violent attack of a police officer resulting in a settlement of over $1,000,000. [*Id*. at ¶¶ 64-75.]

- A firefighter who was only placed on leave after repeatedly masturbating in full view of his co-workers at his firehouse. [*Id*. at ¶ 79.]

- A firefighter who was fired for engaging in sexual acts at a firehouse. [*Id*. at ¶ 78.]

- A dozen firefighters who were disciplined for allowing that firefighter to engage in sexual acts at a firehouse. [*Id*. at ¶ 77.]

Based on the alleged misconduct, Plaintiff brings a Section 1983 claim against Lt. Johnson, a claim against the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and various state-law claims against the City. Before the Court are Defendants' motions to dismiss and the City's motion to bifurcate.

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such

---

[1] Although Plaintiff makes allegations of additional misconduct, Plaintiff fails to allege whether the City ever learned of the misconduct and whether the perpetrators ever were disciplined for the misconduct. Without that information, these allegations do not support Plaintiff's contention that it is the practice or custom of the CFD to inadequately discipline its employees for misconduct. Furthermore, the fact that CFD as paid nearly $92 million in workplace discrimination lawsuits does not alone support the conclusion that any purported custom, practice, and/or policy exists.

that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

### III. Analysis

#### A. Section 1983 Claim

Lt. Johnson moves to dismiss Plaintiff's Section 1983 excessive force claim against him for failure sufficiently allege that (1) Lt. Johnson acted under color of state law, and (2) Plaintiff was seized as required to bring a claim under the Fourth Amendment. The Court addresses each argument in turn.

##### 1. Color of State Law

"To be liable under 42 U.S.C. § 1983, [Lt. Johnson] must have acted 'under color of state law' to deprive [Plaintiff] of some federally guaranteed right." *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (quoting *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995)). "Not every action by a state official or employee is to be deemed as occurring 'under color' of

5

state law." *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989). "[A]ction is taken under color of state law 'when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law[.]'" *Wilson*, 624 F.3d at 392 (quoting *Honaker v. Smith*, 256 F.3d 477, 484-85 (7th Cir. 2001)). "A state officer's conduct does not constitute acting under color of state law unless it is 'related in some way to the performance of the duties of the state office.'" *Id*. (quoting *Honaker*, 256 F.3d at 485). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Lt. Johnson argues that Plaintiff fails sufficiently to allege the under color of state law element of his Section 1983 claim because the challenged conduct was wholly unrelated to Lt. Johnson's authority. In response, Plaintiff argues that because the alleged misconduct related to Lt. Johnson's supervisory authority over Plaintiff, Lt. Johnson was acting under color of state law. According to Plaintiff, when Lt. Johnson struck Plaintiff, Lt. Johnson was attempting to reprimand Plaintiff for informing Capt. Moore that Lt. Johnson ordered Plaintiff to enter the burning building on March 25, 2018. Plaintiff alleges that Lt. Johnson punched Plaintiff to enforce the rules of the CFD relative to the chain of command. [36 (Am. Compl.), at ¶ 57.] Plaintiff further alleges that Lt. Johnson punched Plaintiff to enforce the rules of the CFD relative to how a subordinate should report a protocol violation to a superior officer. [*Id*. at ¶ 58.]

Drawing all inferences in Plaintiff's favor, which the Court must do at this juncture, *Killingsworth*, 507 F.3d at 618, the Court concludes that Plaintiff sufficiently alleges that Lt. Johnson was acting under color of state law. Although "[a] state officer's conduct does not

6

constitute acting under color of state law unless it is 'related in some way to the performance of the duties of the state office,'" *Wilson*, 624 F.3d at 392 (quoting *Honaker*, 256 F.3d at 485), Plaintiff here alleges that Lt. Johnson's conduct related to his disciplinary authority over Plaintiff. This case therefore is unlike *Wilson*, in which the plaintiff failed to allege that the challenged conduct related to the defendant's duties as an alderman. *Id*. (holding that alderman was not acting under color of law during altercation stemming from him attempting to enforce city parking requirements because the alderman crossed over from his aldermanic duties and "entered the realm of law enforcement"). The Court similarly finds *Vanderlinde v. Brochman*, 792 F. Supp. 52 (N.D. Ill. 1992), to be distinguishable. In that case, the plaintiff alleged that firefighters beat him up after the plaintiff walked into the side mirror of a vehicle. *Id*. at 53. During the challenged altercation, the firefighters displayed their badges and represented that they were the "the law in Oak Lawn." *Id*. Still, because law enforcement is no part of a firefighter's duties, the court concluded that plaintiff failed to allege the necessary state action to state a claim under Section 1983. *Id*. at 55.

Here, on the other hand, Plaintiff alleges that Lt. Johnson punched him in order to discipline Plaintiff. Although Lt. Johnson certainly did not have authority to punch Plaintiff in the face as a disciplinary measure, "an official's conduct may constitute state action even when the conduct exceeds the official's grant of authority." *Wilson*, 624 F.3d at 394; see also *Wudtke v. Davel*, 128 F.3d 1057, 1064 (7th Cir. 1997) (holding that school district superintendent was acting under color of state law when he "threatened to take adverse employment actions against" an employee if she did not engage in sexual acts). The Court recognizes that the evidence ultimately may not support Plaintiff's allegations. It certainly is possible that the altercation between Plaintiff and Lt. Johnson was merely a personal dispute between two co-workers, which generally is not actionable under Section 1983—although it might constitute a battery actionable under state law. See *Segreto v.*

7

*Kirschner*, 977 F. Supp. 553, 562-63 (D. Conn. 1997) (collecting cases); see also *Wilson*, 624 F.3d at 394 (7th Cir. 2010) ("[Defendant's] confrontation with [Plaintiff] amounts to no more than a dispute between private citizens."); *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) (on-duty officer who accidentally shot another officer in the groin was not acting under color of law where the shooting officer was engaged in a "personal frolic: tormenting an acquaintance"). However, drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff sufficiently has alleged that Lt. Johnson was acting under color of state law.

    2.    *Seizure*

Claims of excessive force generally are analyzed under the Fourth Amendment's reasonable seizure standard. See *Graham v. Connor*, 490 U.S. 386, 395 (1989). Such a claim requires a seizure of the complaining party. See *Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir. 1998). A seizure for purposes of the Fourth Amendment can occur when an officer "by means of physical force or show of authority has in some way restrained the liberty of a citizen." *United States v. Mendenhall*, 446 U.S. 544, 552 (1980); see also *Graham*, 490 U.S. at 395 n. 10 ("A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, * * * in some way restrained the liberty of a citizen.") (internal quotation omitted). A person is "seized" under the Fourth Amendment "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554; see also *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 720 (7th Cir. 2013). The Supreme Court further explained the circumstances that might indicate a seizure as follows: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be

compelled." *Id*. at 554; see also *Duran v. Sirgedas*, 240 Fed. App'x 104, 110-11 (7th Cir. 2007). To demonstrate a seizure without force, a plaintiff must show not only that her personal liberty had been restrained, *Florida v. Bostick*, 501 U.S. 429, 435-37 (1991), but also that she actually yielded to a show of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991); see also *Hawkins v. Mitchell*, 756 F.3d 983, 993 (7th Cir. 2014) ("[S]eizure of a person without physical contact is also possible—the officer must make a 'show of authority' that a reasonable person would understand to mean that she is not 'free to leave,' and she must submit to that show of authority.").

Plaintiff argues that he was seized for Fourth Amendment purposes because Lt. Johnson was Plaintiff's supervisor and that they both were required by their employer to be at the meeting where the altercation took place. According to Plaintiff, a reasonable person would not feel free to walk away from his boss when his boss is criticizing his performance. While that may be the case as a practical matter, in *Driebel v. City of Milwaukee* the Seventh Circuit made clear that—to establish a seizure under the Fourth Amendment—"[t]he 'physical force or show of authority' must be something more than a threat to terminate [an employee] if he refuses to comply with a [superior's] order[.]" 298 F.3d 622, 642 (7th Cir. 2002) (citing *Fournier v. Reardon*, 160 F.3d 754, 757 (1st Cir. 1998)). "Since the Fourth Amendment does not protect against the threat of job loss, the relevant constitutional inquiry must focus on whether reasonable people in the position of [plaintiff] would have feared seizure or detention if they had refused to obey the commands given by their superior[s]." *Id*. Thus, to the extent that Plaintiff contends that he was seized because he feared adverse employment consequences if he left, Plaintiff cannot proceed on his Section 1983 excessive force claim.

Still, Plaintiff also alleges that he was rendered unconscious as a result of being punched by Lt. Johnson. In *Driebel*, the Seventh Circuit recognized that the use of force by a supervisor could constitute a seizure. *Id*. This is consistent with cases finding that a seizure occurred where the use of force immobilizes a person. See, *e.g.*, *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992) ("[Officer] unquestionably seized [suspect] by shooting him in the chest."). Defendant fails to explain why that allegation is insufficient to establish a seizure as necessary to state a Section 1983 claim for excessive force. Without any argument as to why being rendered unconscious is insufficient to establish a seizure, the Court denies Lt. Johnson's motion to dismiss Plaintiff's Section 1983 claim.

### B. *Monell* Claim

Defendant moves to dismiss Plaintiff's claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "Under *Monell*, a local governmental entity is liable for damages only if a plaintiff can show that the alleged constitutional violation occurred as a result of an official policy, custom, or practice." *Clemons v. Dart*, 2016 WL 890697, at *9 (N.D. Ill. Mar. 9, 2016). Thus, *Monell* "requires a plaintiff suing a municipality or comparable entity to demonstrate that the entity's official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind his constitutional injury."[2] *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

Plaintiff does not contend that any official policy of the City caused the alleged constitutional violation. Still, a plaintiff may establish municipal liability under *Monell* by

---

[2] Defendants argue that Plaintiff must allege specific facts that show the existence of a policy, practice, or custom that led to the constitutional tort committed against Plaintiff. Plaintiff responds that such allegations are unnecessary. Citing pre-*Twombly* and -*Iqbal* cases, Defendant contends that such a requirement essentially would amount to a heightened pleading standard. Plaintiff then quotes from a Supreme Court case indicating that summary judgment and discovery are the best methods for weeding out unmeritorious municipal liability claims. [54, at 11-12 (quoting *Leatherman v. Tarrant County Narcotics Intelligence &*

showing "a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (quoting *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). Plaintiff contends that the complaint identifies a series of violations that create an inference that it is the practice or custom of the CFD to inadequately discipline its employees for misconduct. Specifically, the complaint identifies the following:[3]

- A firefighter who was promoted after committing a violent attack of a police officer resulting in a settlement of over $1,000,000.

- A firefighter who was only placed on leave after repeatedly masturbating in full view of his co-workers at his firehouse.

- A firefighter who was fired for engaging in sexual acts at a firehouse.

- A dozen firefighters who were disciplined for allowing that firefighter to engage in sexual acts at a firehouse.

According to Plaintiff, this practice or custom has created a culture where firefighters know that they will not be disciplined for misconduct.

These allegations are insufficient to establish a pattern and practice. Although the Seventh Circuit has not established "any bright-line rules" for defining a pattern or practice, *Thomas v.*

---

*Coordination Unit*, 507 U.S. 163, 168 (1993).] However, *Leatherman* did not hold that conclusory allegations of a custom or policy are sufficient to survive a motion to dismiss a *Monell* claim. That position has long been rejected. See, *e.g., Sivard v. Pulaski Cty.*, 17 F.3d 185, 189 (7th Cir. 1994) (holding that "mere conclusory allegations concerning the existence of a municipal custom or policy without any factual support" are "insufficient to establish a municipal custom or policy under *Monell*"). Rather, *Leatherman* held that *Monell* claims are governed by Rule 8 and not any heightened pleading standard. 507 U.S. at 168. As currently pled, Plaintiff fails to satisfy Rule 8.

[3] Although Plaintiff makes allegations of additional misconduct, Plaintiff fails to allege whether the City ever learned of the misconduct or whether the perpetrators ever were disciplined for the misconduct. Without that information, these allegations do not support Plaintiff's contention that it is the practice or custom of the CFD to inadequately discipline its employees for misconduct. The Court also notes that—in order to state a *Monell* claim against the City—Plaintiff must allege facts "tending to show that City policymakers were aware of the behavior of the officers, or that the activity was so persistent and widespread that City policymakers should have known about the behavior." *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001). Plaintiff's *Monell* claim also fails in that regard.

*Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010), the Seventh Circuit has made clear that isolated incidents are insufficient to establish a practice or custom under *Monell*. *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) ("[T]hree incidents were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware." (citing *Denno v. School Bd. of Volusia County, Fla.*, 218 F.3d 1267, 1277 (11th Cir. 2000)); *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993) (affirming dismissal of *Monell* claim where plaintiff did "not allege that there is a widespread practice of nonconsensual and unconstitutional searches of students in District 230 that would support a conclusion of municipal liability"); see also *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy." (citation and internal quotation marks omitted)). Here, at least two of the examples identified above by Plaintiff indicate that the wrongdoers actually were disciplined. In any event, these isolated incidents are insufficient to establish a practice or custom.[4] Accordingly, the Court grants the City's motion to dismiss Plaintiff's *Monell* claim.

C.  **Indemnification Claim**

The City moves for dismissal of Plaintiff's indemnification claim because—according to the City—there is no underlying Section 1983 claim against Lt. Johnson. Because the Court

---

[4] Furthermore, to the extent that Plaintiff relies on conclusory allegations to establish his *Monell* claim, as discussed above, such conclusory allegations are insufficient to survive a motion to dismiss under *Iqbal* and *Twombly*. For example, Plaintiff alleges that "[a] code of silence exists among Chicago Fire Department personnel." [36, at ¶ 62.] However, Plaintiff does not allege facts supporting that assertion. Furthermore, Plaintiff does not allege facts establishing that any such code of silence was "the 'moving force' behind the deprivation of constitutional rights," as necessary to state a *Monell* claim under a code of silence theory. To establish municipal liability, Plaintiff must show the existence of an "official policy" or other governmental custom that not only causes but is the "moving force" behind the deprivation of constitutional rights. *Harell v. City of Chicago*, 2019 WL 2611036, at *4 (N.D. Ill. June 25, 2019) (quoting *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012)).

disagrees with that conclusion for the reasons discussed above, the Court denies the City's motion to dismiss Plaintiff's indemnification claim.

## D. *Respondeat Superior* Claim

Finally, the City moves for dismissal of Plaintiff's *respondeat superior* claim as barred by the Illinois Workers' Compensation Act (hereinafter, the "Act"). The "Act is the exclusive remedy for accidental injuries transpiring in the workplace." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017) (citing *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1225 (Ill. 1990)). "To circumvent this exclusivity rule, [Plaintiff] must demonstrate that [his] injury (1) 'was not accidental,' (2) 'did not arise from [his] employment,' (3) 'was not received during the course of [his] employment,' or (4) 'is not compensable under the Act.' *Id*. (quoting *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1016 (7th Cir. 1997)). Plaintiff argues that he can circumvent the exclusivity rule because his injury was not accidental.

Although this assertion has some intuitive appeal on its face, the term "'accidental' is not interpreted technically and includes intentional torts." *Armour v. Homer Tree Servs., Inc.*, 2017 WL 4785800, at *17 (N.D. Ill. Oct. 24, 2017) (citing *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1226 (Ill. 1990)). "Thus, 'injuries inflicted intentionally upon an employee by a co-employee are 'accidental' within the meaning of the [Act], since such injuries are unexpected and unforeseeable from the injured employee's point of view.'" *Id*. (quoting *Meerbrey*, 564 N.E.2d at 1226). There are two exceptions to this rule: "where the employer or its alter ego intentionally inflicts injury upon an employee or where the employer commanded or expressly authorized the intentional injury." *Schwartz v. Home Depot U.S.A., Inc.*, 2000 WL 1780245, at *3 (N.D. Ill. Dec. 4, 2000) (citing *Meerbrey*, 564 N.E.2d at 1226).

Plaintiff argues that Lt. Johnson was the alter ego of the CFD. "[A] managerial employee is found to be the alter ego of her employer * * * through evidence that the manager was in a position of authority over other employees and the employer knew of or allowed the injurious conduct or knew there was a substantial likelihood that injurious conduct would occur." *Toothman v. Hardee's Food Sys., Inc.*, 710 N.E.2d 880, 886 (Ill. App. Ct. 1999). Although Plaintiff alleges that Lt. Johnson was in a position of authority over other employees, Plaintiff does not allege facts sufficient to establish that the CFD and/or the City knew of or allowed the injurious conduct or knew there was a substantial likelihood that injurious conduct would occur. Although Plaintiff contends that Lt. Johnson also was tasked with making decisions on behalf of the CFD—citing to Lt. Johnson ordering Plaintiff into the burning building—Plaintiff fails to cite any authority indicating that such limited decision-making authority is sufficient to establish alter ego liability. In fact, cases cited by the City indicate that the contrary is true. *Jablonski v. Multack*, 380 N.E.2d 924, 927 (Ill. App. Ct. 1978) (holding that being a manger is insufficient to establish alter ego liability); *Tragas v. City of Chicago*, 1998 WL 749438, at *6 (N.D. Ill. Oct. 23, 1998) ("Fabiano was merely a supervisor and was not such a dominant figure in the municipal corporation that he could be considered its alter ego."). Accordingly, the Court concludes that Plaintiff's injury was accidental (as the term is used under the Act) and grants the City's motion to dismiss Plaintiff's *respondeat superior* claim.

## IV. Conclusion

For these reasons, the Court denies the motion to dismiss [38] filed by Lt. Johnson; grants in part and denies in part the motion to dismiss [39] filed by the City of Chicago; and denies the motion to bifurcate [40] as moot. This case is set for further status hearing on October 15, 2019 at 9:00 a.m. The Court directs counsel to file a joint status report, including a proposed discovery plan, no later than October 11, 2019.

Date: September 26, 2019

_____
Robert M. Dow, Jr.
United States District Judge