IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN COPELAND, | ) | |
| | ) | Case No. 18-cv-3780 |
| Plaintiff, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| LIEUTENANT LEONARD JOHNSON and THE CITY OF CHICAGO, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the motion to dismiss [79] filed by Defendant Lt. Leonard Johnson; the motion to deem facts admitted [66] filed by the Plaintiff John Copeland; and the motion to file a second amended answer [70] filed by the City of Chicago. For the reasons set forth below, the Court grants in part and denies in part the motion to dismiss [79], grants the motion to file a second amended answer [70], and denies without prejudice the motion to deem facts admitted [66]. The parties are directed to file a joint status report no later than December 14, 2020 that includes (a) a proposed discovery plan and (b) a statement of whether they have an interest in a referral to the Magistrate Judge for a settlement conference at this time.

**I.    Background**[1]

Plaintiff John Copeland brings this civil action under 42 U.S.C. § 1983 against Defendants Lt. Leonard Johnson and the City of Chicago (hereinafter, the "City"). Plaintiff is a firefighter for the City. [36 (Am. Compl.), at ¶ 5.] Lt. Johnson was at all relevant times a firefighter employed

---

[1] For purposes of ruling on Defendant's motions to dismiss, the Court accepted as true all of Plaintiff's well-pleaded factual allegations and drew all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

by the City. [*Id*. at ¶ 3.] On or about March 25, 2018, Plaintiff and Lt. Johnson were on the scene of a fire in connection with their roles as firefighters for the Chicago Fire Department (the "CFD"). [*Id*. at ¶¶ 6-7.] Although Plaintiff was supposed to remain outside the burning building on standby duty, Lt. Johnson ordered Plaintiff to enter the burning building. [*Id*. at ¶¶ 8, 9-13.] Plaintiff was required to follow the orders given to him by Lt. Johnson. [*Id*. at ¶ 9.] Following this order by Lt. Johnson, Plaintiff entered the burning building. [*Id*. at ¶¶ 9-13.]

On or about March 28, 2018, Plaintiff and Lt. Johnson both attended a mandatory meeting at CFD Engine #121 (located at 1742 95th Street, Chicago, Illinois) to discuss the March 25, 2018 fire. [*Id*. at ¶¶ 14-24.] At the meeting, Captain Darryl Moore asked Plaintiff to identify his role in the March 25, 2018 fire. [*Id*. at ¶ 25.] Plaintiff responded that he was on standby duty. [*Id*. at ¶ 26.] Capt. Moore asked Plaintiff why he entered the burning building. [*Id*. at ¶ 27.] Plaintiff explained that Lt. Johnson ordered him to enter the burning building. [*Id*. at ¶ 28.] Plaintiff then criticized Lt. Johnson by saying to Capt. Moore: "Maybe your lieutenant didn't know his role at the fire." [*Id*. at ¶ 29.]

Following this comment, Lt. Johnson confronted Plaintiff and stated: "Since I don't know my role, make sure you know your role." [*Id*. at ¶¶ 30-31.] Lt. Johnson then punched Plaintiff in the face two times. [*Id*. at ¶¶ 32-41.] After the second punch, Plaintiff fell to the ground, hit his head, and lost consciousness. [*Id*. at ¶¶ 46-49.] Plaintiff spent six hours in the hospital and suffered injuries to his left eye, lip, head, and back as a result of the actions of Lt. Johnson. [*Id*. at ¶¶ 50-51.] Lt. Johnson was Plaintiff's superior officer at the Match 25, 2018 fire and at the March 28, 2018 meeting. [*Id*. at ¶¶ 52-53.]

Plaintiff alleges that Lt. Johnson punched Plaintiff to discipline him for "breaking the chain of command and/or violating the code of silence" and to dissuade him from reporting misconduct

in the future. [36 at ¶ 56.] Plaintiff alleges that Lt. Johnson punched Plaintiff to enforce the rules of the CFD relative to the chain of command and to enforce the rules of the CFD relative to how a subordinate should report a protocol violation to a superior officer. [*Id*. at ¶ 57-58.] Plaintiff further alleges that a "code of silence" exists among CFD personnel. [*Id*. at ¶ 61.] According to Plaintiff, this code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct) and contributes to the generation of secrets in the CFD regarding misconduct. [*Id*.] Finally, Plaintiff alleges that the code of silence in the CFD is a method of preventing firefighters from reporting the misconduct of their coworkers to their superiors. [*Id*. at ¶ 59.]

Based on the alleged misconduct, Plaintiff brought a Section 1983 claim against Lt. Johnson, a claim against the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and various state-law claims against the City. In September 2018, Defendants moved to dismiss [38, 39], and the City moved to bifurcate [40]. The Court denied the motion to dismiss [38] filed by Lt. Johnson, allowing the Section 1983 claim to proceed, granted the City's motion [39] with respect to the *respondeat superior* and *Monell* claims, but denied it with respect to the indemnification claim, and denied the motion to bifurcate [40] as moot. See [63].

Lt. Johnson moved to dismiss again [79], this time arguing that qualified immunity shields him from liability. Also before the Court at this time are Plaintiff's motion to deem certain facts admitted by the City [66] and the City's motion to file a second amended answer [70].

**II.     Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain

3

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).  Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558.  Dismissal under Rule 12(b)(6) based on qualified immunity is appropriate only when the plaintiff's well-pleaded allegations, taken as true, do not "state a claim of violation of clearly established law." *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996)).  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

**III.  Analysis**

    **A.  Qualified Immunity**

Lt. Johnson moves to dismiss Plaintiff's Section 1983 excessive force claim against him on qualified immunity grounds, arguing that Plaintiff has not established that he has a constitutional right to be free from battery at work and that, at the time of the battery, it was not clear to a reasonable official that Lt. Johnson's conduct was unlawful.

4

The doctrine of qualified immunity protects public officials performing discretionary functions against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Tangwall v. Stuckey*, 135 F.3d 510, 514 (7th Cir. 1998) (citations omitted); see also *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent and those who knowingly violate the law"); *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is an affirmative defense, but the plaintiff carries the burden of defeating it once it is raised. *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017).

The Seventh Circuit has recognized that dismissal under Rule 12(b)(6) can preserve an official's right, under the qualified-immunity doctrine, "not to stand trial or face the other burdens of litigation," including pretrial discovery. *Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). But dismissal under Rule 12(b)(6) is not the only way to preserve that right. *Id.*, citing *Jacobs v. City of Chicago*, 215 F.3d 758, 774–75 (7th Cir. 2000) (Easterbrook, J., concurring in part and in the judgment) (identifying other means by which immunity may be decided without protracted discovery). Furthermore, it may also not be the most appropriate procedural setting to determine whether an official is entitled to qualified immunity, because immunity may depend on particular facts that a plaintiff need not plead to state a claim. *Id.*, citing *Alvarado v. Litscher*, 267 F.3d 648, 651–52 (7th Cir. 2001). To defeat an assertion of qualified immunity at the motion to dismiss stage, a plaintiff must allege facts that, if true, would constitute a violation of a statutory or constitutional right, and show that the right was

5

"clearly established" at the time of the alleged violation, such that a reasonable public official would have known his conduct was unlawful. *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020).

### 1. Unreasonable Seizure

The constitutional right Plaintiff to which points is the Fourth Amendment right to be free from unreasonable seizures—and excessive force in particular. [89, at 4-5.] In ruling on the previous motion to dismiss, the Court determined that Plaintiff's fear of employment consequences if he left the meeting with Capt. Moore did *not* constitute a seizure, but suggested that the punches that rendered him unconscious did:

> Still, Plaintiff also alleges that he was rendered unconscious as a result of being punched by Lt. Johnson. In *Driebel*, the Seventh Circuit recognized that the use of force by a supervisor could constitute a seizure. *Id*. This is consistent with cases finding that a seizure occurred where the use of force immobilizes a person. See, *e.g.*, *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992) ("[Officer] unquestionably seized [suspect] by shooting him in the chest."). Defendant fails to explain why that allegation is insufficient to establish a seizure as necessary to state a Section 1983 claim for excessive force. Without any argument as to why being rendered unconscious is insufficient to establish a seizure, the Court denies Lt. Johnson's motion to dismiss Plaintiff's Section 1983 claim.

[63, at 10.] Plaintiff also, persuasively, points the Court to *Acevedo v. Canterbury*, in which a police officer punched a plaintiff in the head at a car impound lot. 457 F.3d 721, 725 (7th Cir. 2006). There, the Seventh Circuit found that a seizure had occurred, in large part because the plaintiff lost consciousness and "remained in a daze for a time" after the punch, unable to move and unaware of his surroundings. *Id,* at 723. So, Plaintiff is correct that getting knocked out by a punch would constitute a seizure for Fourth Amendment purposes.

But Plaintiff has a problem: the right to be free from unreasonable seizures, including knock-out punches, is clearly established in the context of arrests and uses of force by police officers, but not in the context of discipline of public employees. The cases Plaintiff cites all fall

6

into the category of use of force by police officers. *Driebel*, in relevant part, dealt with the seizure of a police officer by another police officer as part of a criminal investigation. *Driebel v. City of Milwaukee*, 298 F.3d 622, 649 (7th Cir. 2002). *Carter* too involved police use of force during a criminal arrest, *Carter v. Buscher*, 973 F.2d 1328, 1330 (7th Cir. 1992), and *Jensen* involved one officer killed by another during a SWAT raid gone wrong. *Jensen v. City of Oxnard*, 145 F.3d 1078, 1084 (9th Cir. 1998).[2] The salient fact in these cases is the criminal context, not the fact that the plaintiff and defendant worked at the same employer.[3]

In support of his position, Plaintiff cites two cases that do not involve police officer defendants but fall into the same category as the police cases. The first is *Smith v. Altman*, 2015 WL 4251244 (N.D. Ill. July 14, 2015), which Plaintiff cites for the proposition that firefighters can be liable for excessive force. The plaintiff in *Altman*, a police officer, alleged that he responded to a call about two people who had fallen into the Chicago River. A fire department captain told the plaintiff to leave, swore at him, and shoved him backwards, causing him to fall on the ground and injure his neck. The police officer sued the fire captain for, among other things, a Section 1983 violation premised on excessive force. [12-cv-4546, 59, at 5]. A jury found the fire captain liable on that count. *Smith v. Altman*, 2015 WL 4251244, at *1 (N.D. Ill. July 14, 2015). But in this case, the fire captain was similarly situated to a police officer using force in the criminal

---

[2] See also *Treiber v. Rompala*, 2002 WL 1467673, at *5 (N.D. Ill. July 9, 2002) (plaintiff police officer whose arm was grabbed and twisted by a fellow police officer did *not* have a clearly established constitutional right to be free from such use of force).

[3] The Court's decision in *Ploski v. Medenica* is in the same category and therefore distinguishable from the instant case. 2019 WL 4014193, at *1 (N.D. Ill. Aug. 26, 2019). In *Ploski*, the Court granted the defendant police officer's motion for summary judgment on qualified immunity grounds, in part because the plaintiff failed to show that, as a police recruit, he had a clearly established constitutional right to be free from being hit intentionally by an instructor during a training session at the police academy. *Id.* at *3. Admittedly, a police recruit at a training session is not in the exact same position as an arrestee, but the nature of the physical training subjects him to physical control and use of force in a way that public employees generally do not experience when they go to work.

context, rather than one coworker striking another, because a city ordinance gave "the chief fire marshal or other member of the fire department in charge [of a scene] * * * power to arrest any person refusing to obey lawful orders," and the relevant legal question was whether the defendant's use of force to effect a lawful order was reasonable. *Id.* at *4 (citing City of Chicago Municipal Code § 2–36–390). *Altman* is therefore like *Driebel* and the other cases discussed above, and unlike the matter before this Court.

Additionally, in *Cole v. City of Chicago*, the court denied a motion to dismiss a Section 1983 excessive force claim by a patient who alleged that a paramedic had slammed him on the ground after taking him out of the ambulance, and later removed him from the emergency room and beat him further. 2008 WL 68687 (N.D. Ill. Jan. 4, 2008). But the issue in that case was whether the paramedic had acted under color of state law, not whether the paramedic had qualified immunity. *Cole v. City of Chicago*, 2008 WL 68687, at *3 (N.D. Ill. Jan. 4, 2008). The court held only (in relevant part) that the plaintiff had adequately alleged that the paramedic was acting under color of state law, not that "paramedics could be liable for using excessive force" as Plaintiff asserts.[4]

While excessive force, at least by police or similar government officials, is a violation of the Fourth Amendment, and there is a general right to be free from unreasonable seizures, none of the cases Plaintiff cites (and none that the Court located in its own review of the caselaw) sets forth a public employee's right to be free from excessive force, or any unreasonable seizure. Maybe that is—or should be—a right under the Fourth Amendment, but absent authority articulating such a proposition or a strong argument deriving such a right from existing authority, the Court cannot

---

[4] Even if that had been the holding, Plaintiff has not presented authority suggesting that a single district court opinion denying a motion to dismiss makes a right "clearly established" for purposes of qualified immunity analysis.

find it to be clearly established. As a result, the Court grants in part Lt. Johnson's motion to dismiss on qualified immunity grounds, but only as to a claim based on the Fourth Amendment right to be free from excessive force.

### 2. First Amendment

Although the caselaw does not appear to recognize a clear right under the Fourth Amendment, it does reveal that Plaintiff had a clearly established right not to be punched in the face under the First Amendment. To prevail on a claim that his First Amendment rights were violated, Plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017).

In *Coady v. Steil*, the Seventh Circuit addressed a qualified immunity argument in a First Amendment case with similar circumstances. 187 F.3d 727 (7th Cir. 1999). There, a firefighter placed a sign promoting a Democratic candidate for mayor on top of his car, which was parked next to the firehouse. *Id.* at 729. The Republican fire chief told the firefighter to move the car or take down the sign. *Id*. After some back and forth about whether putting the sign in the back seat was acceptable, the fire chief allegedly took the firefighter to the office, cursed hm out, and struck him a number of times. *Id*. The firefighter ran from the building, and several of his coworkers saw bruises, contusions, and lacerations on his face. *Id*. The firefighter brought a Section 1983 suit against the chief, arguing that the attack was an unlawful retaliation against him for exercising his protected First Amendment rights by supporting a candidate for public office. The defendant fire chief moved for summary judgment, arguing in relevant part that he was entitled to qualified immunity. *Id.*

9

The district court in *Coady* found that qualified immunity did not shield the fire chief from liability, and the Seventh Circuit affirmed. It determined that the firefighter's sign was political speech, which is protected by the First Amendment, and that his interest in placing a sign endorsing a mayoral candidate on his personal car outweighed the government's interest in the effective and efficient delivery of firefighting services. *Id*. at 733. More importantly for present purposes, the Seventh Circuit found that the plaintiff's right was clearly established at the time of the attack, writing "We think it clear that being punched in the face would deter anyone from exercising his or her First Amendment rights." *Id*. at 734.

The similarities between *Coady* and the instant case should be obvious—like the plaintiff in *Coady*, here a firefighter made a statement that a superior officer disliked, and the superior punched him for it. But one large difference needs to be addressed: Plaintiff in this case was not endorsing a political candidate, but criticizing Lt. Johnson for his actions at the scene of the March 25, 2018 fire. The analysis thus boils down to this question: would the allegations in the amended complaint, if true, show that Plaintiff engaged in speech protected by the First Amendment?

Public employee speech is protected by the First Amendment if (1) it would be protected if uttered by a private citizen; (2) it concerns something more than a personal employee grievance; and (3) the employer has not shown a convincing reason to forbid the speech. *Hulbert v. Wilhelm*, 120 F.3d 648, 653 (7th Cir. 1997) (citations omitted). However, the First Amendment does not protect statements made as part of one's job. *Fairley v. Andrews*, 578 F.3d 518, 522 (7th Cir. 2009) (citing *Garcetti v. Ceballos,* 547 U.S. 410 (2006)).

The Seventh Circuit summarized the guidance the for analyzing a public employee free speech claim in *Chrzanowski v. Bianchi*:

> Public employee speech does not lose First Amendment protection because it concerns the subject matter of the employee's job. *[Garcetti]* at 421. To the

10

> contrary, the Court reaffirmed that public employees are often "the members of a community most likely to have informed and definite opinions" on matters of public concern, and that it remains "essential that they be able to speak out freely on such questions without fear of retaliatory dismissal." *Id.* (quoting *Pickering v. Bd. of Ed. of Township High School Dist. 205, Will Cnty.,* 391 U.S. 563, 572 (1968)). Likewise, public employees' speech is not subject to restriction simply because it occurs inside the office, since "[m]any citizens do much of their talking inside their respective workplaces." *Id.* at 420–421. In other words, speech does not "owe[ ] its existence to a public employee's professional responsibilities" within the meaning of *Garcetti* simply because public employment provides a factual predicate for the expressive activity; rather, *Garcetti* governs speech that is made "pursuant to official duties" in the sense that it is "government employees' work product" that has been "commissioned or created" by the employer. *Id.* at 422 (citing *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 833 (1995)).

725 F.3d 734, 738 (7th Cir. 2013). In *Chrzanowski*, the Seventh Circuit found that a prosecutor's testimony about potential wrongdoing by his boss—even though it "concern[ed] the subject matter of [his] employment"—did not owe its existence to his official responsibilities and was within the protection of the First Amendment. *Id*. at 740. The Court compared his speech to that of a schoolteacher who writes a newspaper editorial criticizing the School Board and superintendent, citing *Pickering,* 391 U.S. at 566, or of an assistant district attorney who speaks with her co-workers about potential corruption within the District Attorney's office, *Connick v. Myers,* 461 U.S. 138, 149 (1983).

Here, Plaintiff has alleged enough facts to set forth a plausible First Amendment claim. The complaint alleges that Plaintiff was criticizing Lt. Johnson for how he executed his duties at the March 25, 2018 fire. Specifically, it alleges that Plaintiff told Captain Moore that Lt. Johnson had ordered him to enter the burning building. [36, at ¶ 28.] It also avers that he told Captain Moore, "Maybe your lieutenant [*i.e.* Johnson] didn't know his role at the fire." [*Id.* at ¶ 29.] Lt. Johnson then responded, "Since I don't know my role, make sure you know your role," [*id.* at ¶ 31] and punched Plaintiff in the face twice [*id.* at ¶ 34]. It further claims that Lt. Johnson punched

11

Plaintiff to discipline him for criticizing Lt. Johnson to Captain Moore [*id.* at ¶ 56d] or to dissuade him from reporting misconduct in the future [*id.* at ¶ 56e].

A commanding fire officer's performance at the scene of a fire relates to public safety and therefore raises an issue of public concern, and Plaintiff's complaint alleges more than a personal grievance between him and Lt. Johnson. *Cf. Hulbert v. Wilhelm*, 120 F.3d 648, 650 (7th Cir. 1997) (county employee engaged in protected speech when he reported that highway department had a large open fire burning potentially toxic materials and when he reported concerns about unusual billing practices followed by the county surveyor). And at least at the motion to dismiss stage, the record does not demonstrate a convincing reason for Plaintiff's employer to suppress such speech. Furthermore, it is not self-evident that Plaintiff's speech arose from his job duties; a firefighter's job is fighting fires, and nothing in the complaint suggests that Plaintiff's job normally entailed critiquing other firefighters. At least as alleged in the amended complaint, Plaintiff was disciplined for sharing an opinion formed in the course of his public employment that falls "outside the duties of employment." *Chrzanowski v. Bianchi*, 725 F.3d 734, 740 (7th Cir. 2013). As the case proceeds, the facts may or may not ultimately bear out a First Amendment claim, but at this point, the Court takes the allegations in the amended complaint as true and draws all reasonable inference in favor of Plaintiff. As a result, the motion to dismiss is denied in part with respect to a First Amendment claim, without prejudice to Lt. Johnson raising qualified immunity or any other defense, if appropriate, at a later stage of the case.

It is true that the amended complaint does not say "First Amendment violation," at any point, but that is no barrier to the Court's ruling. See, *e.g.*, *Brazdo v. Illinois Dep't of Prof'l Regulation,* 1997 WL 403500, at *3 (N.D. Ill. July 15, 1997) (considering a motion to dismiss on qualified immunity grounds and analyzing claim labeled as a First Amendment claim under the

12

Fourteenth Amendment because such analysis better fit the facts alleged). Parties are required "to plead facts, not causes of action." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2019 WL 4166864, at *9 (N.D. Ill. Sept. 3, 2019) (permitting party to proceed under a conspiracy theory even though party did not plead a conspiracy claim because the facts alleged were sufficient to support a conspiracy theory); see also *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories."). Moreover, when ruling on a motion to dismiss, the issue is "simply whether 'any set of facts consistent with the complaint would give [the plaintiff] a right to recover, no matter what the legal theory.'" *Shea v. Winnebago Cnty. Sheriff's Dep't*, 746 F. App'x 541, 545 (7th Cir. 2018) (alteration in original) (quoting *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005)). And, as explained above, Plaintiff's amended complaint at least sets forth a right to recover for a violation of his First Amendment rights. Accordingly, the amended complaint should not be dismissed.

### B. Motion to Deem Admitted and Motion to Amend Answer

Plaintiff filed a motion [66] to deem certain facts in the amended complaint to be admitted on two grounds. First, Plaintiff argued that the City partially denied certain allegations without responding to the remainder of those allegations, so the remainder should be deemed admitted. Second, the City's responses asserting that it "lacks knowledge" were insufficient because they could have interviewed CFD employees, so those allegations should be admitted. The City responded that its answer addressed to the substance of the allegations in accordance with Rule 8 and that it had interviewed witnesses, who provided contradictory accounts of the underlying events, so its "lacks knowledge" responses were appropriate. See [84]. The City also sought permission to file a second amended answer that would include updated responses as well as an additional affirmative defense under 745 ILCS 10/9-102 (that Lt. Johnson was not acting within

13

the scope of his employment.)[5] See [70]. After reviewing the remainder of the briefing on this issue, see [86, 90], the Court grants the City's motion to file an amended answer [70] and denies Plaintiff's motion to deem facts admitted [66] as moot.

After a pleading can no longer be amended as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); see also *Larkin v. Galloway,* 266 F.3d 718, 721–22 (7th Cir. 2001) ("Whether or not to grant a defendant's motion to amend her answer is a decision committed to the discretion of the district court."). A district court may exercise its discretion to allow a late affirmative defense if the plaintiff does not suffer prejudice from the delay. *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020) (citations omitted).

Because justice requires, the Court grants the City's motion. Based on its continuing investigation of the case, including obtaining the transcripts from Lt. Johnson's criminal battery case in state court, see [70, at 3-4], the City asserts that a second amended answer will provide more fulsome responses to the allegations in the first amended complaint, which the Court and all parties should find helpful. Furthermore, Plaintiff will not suffer prejudice from allowing the City to add an affirmative defense based on 745 ILCS 10/9-102. Because the argument that Lt. Johnson was acting outside the scope of his duties does not differ much from the argument that he was not acting under the color of law, which Lt. Johnson raised in his first motion to dismiss filed in August 2018, this line of argument should not be too surprising. See *Akrabawi v. Carnes Co.*, 152 F.3d 688, 693 (7th Cir. 1998) (affirming district court decision to allow amendment of answer on last day of trial to add an affirmative defense because it was "a logical outgrowth of the evidence" and

---

[5] In relevant part, the statute reads: "A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or *an employee while acting within the scope of his employment* is liable in the manner provided in this Article." (emphasis added)

14

it was "inconceivable" that the plaintiff did not anticipate the defendant's argument). The Court concludes that the amendment is appropriate under Fed. R. Civ. P. 15(a)(2) and grants City's motion [70] to file a second amended answer. Consequently, Plaintiff's motion [66] to deem facts admitted is denied as moot, but without prejudice. If Plaintiff believes the second amended answer is so deficient that it violates Rule 8 and requires Court intervention, Plaintiff may raise the argument in a new motion.

**IV.  Conclusion**

For these reasons set forth above, the Court grants in part and denies in part the motion to dismiss [79], grants the motion to file a second amended answer [70], and denies without prejudice the motion to deem facts admitted [66]. The parties are directed to file a joint status report no later than December 14, 2020 that includes (a) a proposed discovery plan and (b) a statement of whether they have an interest in a referral to the Magistrate Judge for a settlement conference at this time.

Date: November 30, 2020

_____
Robert M. Dow, Jr.
United States District Judge