IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN COPELAND, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-03780 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| LIEUTENANT LEONARD JOHNSON and THE CITY OF CHICAGO, | ) ) ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Before this Court is a lawsuit under 42 U.S.C. § 1983 involving the use of force by an officer of the Chicago Fire Department on a subordinate. Plaintiff John Copeland brought this action against Defendant Lieutenant Johnson for violation of his rights under federal and state law. In addition to Lt. Johnson, Plaintiff also named his employer, the City of Chicago, as a defendant to this suit seeking to impose liability on the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the theory of *respondeat superior*, and for indemnification of Lt. Johnson's claims under Illinois state law, see 745 ILCS § 10/9–102. This Court previously dismissed the *Monell* and *respondeat superior* claims against the City.

In the instant motion, the City seeks dismissal of the sole remaining thread tying it to this lawsuit, the § 10/9–102 indemnification claim, under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants Defendant City of Chicago's motion to dismiss Count IV [133] from the Second Amended Complaint [127] and dismisses the City of Chicago from this suit.

I.      Background[1]

Plaintiff John Copeland brings this civil action under 42 U.S.C. § 1983 against Defendants Lt. Leonard Johnson and the City of Chicago (hereinafter, the "City"). Plaintiff is a firefighter for the City. [127 (2d Am. Compl.) at ¶ 5.] Lt. Johnson was at all relevant times a firefighter employed by the City. [*Id.* at ¶ 7.] On or about March 25, 2018, Plaintiff and Lt. Johnson were on the scene of a fire in connection with their duties as firefighters for the Chicago Fire Department ("CFD"). [*Id.* at ¶¶ 6–7.] Plaintiff was Lt. Johnson's subordinate and required to follow the orders given to him by Lt. Johnson. [*Id.* at ¶¶ 9–10.] Although Plaintiff was to remain outside the burning building on standby duty, Lt. Johnson ordered Plaintiff to enter the burning building. [*Id.* at ¶¶ 8, 11.] Following this order by Lt. Johnson, Plaintiff entered the burning building. [*Id.* at ¶ 13.]

On or about March 28, 2018, Plaintiff and Lt. Johnson both attended a mandatory meeting at CFD Engine # 121 (located at 1742 95th Street, Chicago, Illinois) with Captain Darryl Moore to discuss the March 25, 2018 fire. [127 (2d Am. Compl.) at ¶¶ 14–15, 21.] While present at the March 28, 2018 meeting, both Plaintiff and Lt. Johnson were working as firefighters of the CFD and on the clock as employees. [*Id.* at ¶¶ 16–19.] At the meeting, Plaintiff criticized Lt. Johnson's actions at the March 25, 2018 fire. [*Id.* at ¶ 22.] Specifically, Plaintiff stated to Cap. Moore: "Maybe your lieutenant didn't know his role at the fire." [*Id.* at ¶ 25.]

Following this comment, Lt. Johnson confronted Plaintiff and stated: "Since I don't know my role, make sure you know your role." [127 (2d Am. Compl.) at ¶¶ 26–27.] Lt. Johnson then punched Plaintiff in the face two times. [*Id.* at ¶¶ 28–32.] After the second punch, Plaintiff fell to the ground, hit his head, and lost consciousness. [*Id.* at ¶¶ 41–44.] Plaintiff spent six hours in the

---

[1] The Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

hospital and suffered injuries to his left eye, lip, head, and back as a result of the actions of Lt. Johnson. [*Id.* at ¶¶ 45–46.]

Both Plaintiff and Lt. Johnson were working as employees of the CFD, on the clock, at a CFD meeting, and on CFD property at the time Lt. Johnson punched Plaintiff. [127 (2d Am. Compl.) at ¶¶ 33–37.] Lt. Johnson was Plaintiff's superior officer and above Plaintiff in the CFD chain of command at the March 25, 2018 fire and at the March 28, 2018 meeting. [*Id.* at ¶¶ 47–50.] Plaintiff alleges that criticism of a superior officer's performance is not part of Plaintiff's official, routine, or required duties. [*Id.* at ¶ 23.] Plaintiff further alleges that a commanding officer's performance at the scene of the fire relates to public safety and is an issue of public concern. [*Id*. at ¶¶ 23–24.] Finally, although Plaintiff advanced several allegations in the Amended Complaint regarding the physical assault's role in enforcing the rules of the CFD relative to the chain of command and a "code of silence," [36 (Am. Compl.) at ¶ 56], Plaintiff did not include these allegations in the Second Amended Complaint.

Based on the alleged misconduct, Plaintiff brought a § 1983 claim against Lt. Johnson for violation of his Fourth Amendment rights under the United States Constitution, a claim against the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and various state-law claims against the City. In September 2018, Defendants moved to dismiss [38, 39], and the City moved to bifurcate [40]. The Court denied the motion to dismiss [38] filed by Lt. Johnson, allowing the § 1983 claim to proceed, granted the City's motion [39] with respect to the *respondeat superior* and *Monell* claims, but denied it with respect to the indemnification claim, and denied the motion to bifurcate [40] as moot. Lt. Johnson again moved to dismiss [79], arguing this time that qualified immunity shielded him from liability. The Court granted in part and denied

in part the motion to dismiss [79]. At that time, it also granted the City's motion for leave to file a second amended answer and denied without prejudice its motion to deem facts admitted [79].

In short, this Court dismissed all but one of the claims against the City in its order [63] granting in part the City's motion to dismiss [39], so the sole remaining claim in Plaintiff's Second Amended Complaint [127] against the City is Plaintiff's indemnification claim (Count IV). Now before this Court is the City's motion to dismiss [133] that indemnification claim (Count IV) from the Second Amended Complaint [127].

## II.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S.

4

at 558. In determining whether the complaint meets this standard, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618. Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

### III.  Analysis

Plaintiff claims that the City must indemnify Lt. Johnson for any judgment or settlement for Lt. Johnson's underlying violations of federal and state law. The Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS § 10/9–102, authorizes local public entities "to pay any tort judgment or settlement for compensatory damages * * * for which it or an employee while acting within the scope of his employment is liable." To succeed on an indemnification claim against the locality, a plaintiff "must establish that [the employee] was acting within the scope of his employment at the time [the plaintiff] was attacked." See *Copeland v. County of Macon*, 403 F.3d 929, 932 (7th Cir. 2005) (citing *Pyne v. Witmer*, 543 N.E.2d 1304, 1309 (Ill. 1989)).

To ascertain whether an employee was acting within the scope of employment, the Illinois Supreme Court applies § 228 of the RESTATEMENT (SECOND) OF AGENCY, which "identifies three general criteria." *Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009). As the Seventh Circuit recently framed *Adames*' three-part analysis, "[f]irst, the relevant conduct must be of the kind that the employee was employed to perform. Second, the conduct must have occurred substantially within the time and space limits authorized by the employment. And third, the conduct must have been motivated, at least in part, by a purpose to serve the employer." *Elston v. County of Kane*,

5

948 F.3d 884, 887 (7th Cir. 2020). "Because 'all three criteria * * * must be met,' failure to establish any one of them is sufficient to place conduct outside the scope of employment." *Id.* (quoting *Adames*, 909 N.E.2d at 755). Only "if no reasonable person could conclude from the evidence that an employee is acting within the course of employment," should a court "hold as a matter of law that the employee was not so acting." *Adames*, 909 N.E.2d at 759; see also *Pyne*, 543 N.E.2d at 1309 ("[W]hen a deviation is exceedingly marked and unusual, as a matter of law the employee may be found to be outside the scope of employment.").

The City moves for dismissal of Plaintiff's indemnification claim, arguing that the Second Amended Complaint fails to state a claim under Rule 12(b)(6) that Lt. Johnson was acting within the scope of his employment under Illinois law. More specifically, the City advances two, independent bases in contending that Plaintiff's complaint fails to state a claim. First, the City asserts that the conduct does not satisfy the first § 228 criterion—that the conduct was the kind Lt. Johnson was employed to perform. Second, the City contends that Lt. Johnson's conduct did not satisfy the third § 228 criterion—that Johnson's conduct was actuated, at least in part, by a purpose to serve his employer. As explained below, the Court agrees that Plaintiff's complaint fails as a matter of law under at least the first criterion and therefore that dismissal is appropriate.

In regard to the contention that Lt. Johnson was not acting within the scope of his employment, the City argues that punching the Plaintiff was not the type of conduct CFD employed Lt. Johnson to perform. As noted above, "[c]onduct of a servant is not within the scope of employment if it is different in kind from that authorized." *Adames*, 909 N.E.2d at 299 (citing RSTMT. (SECOND) OF AGENCY § 228(2)). As the Illinois Supreme Court explained in *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 993 (Ill. 2007), a court must ask "whether or not the loss

6

resulting from the employee's acts should justly be considered as one of the normal risks to be borne by the employer."

*Copeland v. County of Macon*, 403 F.3d at 932, and *Parks v. Brinkman*, 9 N.E.3d 1228 (Ill. App. Ct. 2014), are both illustrative. In *Copeland*, inmates attacked a pretrial detainee after a corrections officer facilitated them in executing the attack while working his assigned shift. 403 F.3d at 931. The detainee sought to hold the officer's employer liable under the Illinois indemnification statute, but the Seventh Circuit reversed the denial of summary judgment for the County employer, finding no issue of material fact that the officer was acting within the scope of his employment. *Id.* at 931–32. The employee's "conduct in orchestrating the attack of a pre-trial detainee was not the type of conduct that he was authorized to perform nor was his conduct actuated by a purpose to serve his employer." *Id.* at 931. Regarding the first criterion, the Court explained that "it is difficult for this Court to believe that [the employee's] conduct, in any way, helped to enforce the regulations of the Macon County Jail." *Id.* at 933.

In *Parks*, the Illinois Appellate Court concluded that an employee's conduct that is outside the ambit of her job responsibilities exceeds the scope of the employee's employment even while on the job. In that case, an employee injured a volunteer when the employee hugged and attempted to lift the volunteer off the ground while working his employer's event. 9 N.E.3d at 1230. The volunteer sought to hold the employer vicariously liable for injuries incurred as a result. *Id.* at 1232.[2] On appeal, the court directed a verdict for the defendant because the plaintiff created no triable issue of fact that the plaintiff's injuries were caused by conduct within the scope of

---

[2] Although *Parks* addressed whether the employer could be liable under the theory of *respondeat superior*, it is just as instructive for assessing Plaintiff's indemnification claim. See *Lyons v. Adams*, 257 F. Supp. 2d 1125, 1138–39 (N.D. Ill. 2003) ("[T]he analysis of the scope of employment issue is essentially the same for purposes of liability under the doctrine of *respondeat superior* and indemnification under Section 10/9–102[.]").

7

employment. *Id.* at 1244. The plaintiff had failed to satisfy the first criterion of the § 228 test: "[T]here [was] no dispute that the tasks that [the employee] was required to perform" at the employer's event "were limited to pouring or serving cups of beer" and therefore "it was clear" the conduct "was outside of his assigned job duties." *Id.* at 1240-41.

In this case, there is no question that punching a fellow firefighter in the face is not the kind of conduct Lt. Johnson was employed to perform. As the City points out, Lt. Johnson and Plaintiff were together on the date of the incident in question "to attend[] a mandatory work meeting" at which they were to "discuss fire suppression tactics." [133 at ¶ 6.] The pleadings make clear that Johnson was Plaintiff's superior officer in the CFD hierarchy. In these circumstances, like the employees in *Parks* and *Copeland*, there is no dispute that the second criterion of § 228 was satisfied. But being on the job alone is not enough to survive dismissal. Here, "it is clear that [Lt. Johnson's] conduct at the time of the accident was outside of his assigned job duties." See *Parks*, 9 N.E.2d at 1240; *Copeland*, 403 F.3d at 932.

Plaintiff's argument that Lt. Johnson's conduct was incidental to his role managing, supervising, and exercising authority over Plaintiff does not alter the Court's analysis. Specifically, Plaintiff asserts that punching Plaintiff was the type of conduct Lt. Johnson was employed to perform because the lieutenant role was "to manage, supervise, and give orders to those under his command" and that "[b]y punching the Plaintiff, Defendant Johnson was * * * trying to teach the Plaintiff what the Plaintiff's role was at the CFD." [136 at 5.] This argument is not persuasive for two reasons. First, Plaintiff does not allege in his Second Amended Complaint that Lt. Johnson's role was to discipline, let alone enforce, the organizational hierarchy. Second, in contrast to his Amended Complaint [36], Plaintiff no longer alleges that the CFD had a "code of silence." The Second Amended Complaint supersedes the earlier iterations of Plaintiff's

complaints. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 773, 778–78 (7th Cir. 1998) ("An amended pleading ordinarily supersedes the prior pleading. The prior pleading is in effect withdrawn as to all matters not restated in the amended pleadings * * *." quoting *Nisbet v. Van Tuyl*, 224 F.3d 66, 71 (7th Cir. 1955)). Plaintiff thus is bound by his decision to omit any allegation that the City has a policy promoting Lt. Johnson's conduct. See *Parks*, 909 N.E.2d at 1240–42 (criterion one not satisfied despite that members testified to hugging one another, they did not do so as a requirement of the job and "the defendant had no policy of promoting" it).

Even if Plaintiff had alleged that Lt. Johnson was required to mete out discipline and/or enforce a code of silence, his attempt to impose liability on the City on that basis would fail. No reasonable person could conclude that CFD authorized Lt. Johnson to literally take matters into his own hands by managing, disciplining, or supervising a fellow employee through physical assault. *See Copeland*, 403 F.3d at 933 (rejecting similar argument because "[t]he idea that the Macon County Jail would have regulations in place authorizing corrections officers to recruit and assist inmates to attack a pre-trial detainee is ludicrous."). *Jones v. Patrick & Associates Detective Agency, Inc.*, 442 F.3d 533, 535–36 (7th Cir. 2006), cited by Plaintiff, is inapposite because the managerial dimension of Lt. Johnson's job did not involve the use of force. Although CFD might expect firefighters to incidentally employ force while suppressing fires, they clearly would not be authorized to do so to settle interpersonal disputes. See *id.* (triable issue of fact from security guard's use of force against unauthorized prior entrant but observing that "[i]t would be another matter * * * if his job didn't predictably entail the occasional use of force to subdue rule breakers.").

Plaintiff's reliance on *Bonnem v. Harrison*, 150 N.E.2d 383 (Ill. App. Ct. 1957), *Davila v. Yellow Cab Co.*, 776 N.E.2d 720, (Ill. App. Ct. 2002), and *Bryant v. Livingston*, 619 N.E.2d 550

9

(Ill. App. Ct. 1993), also is misplaced because the employees in each case committed the tort while carrying out a duty required by their employers. In *Bonnem*, the employee was on an errand for his employer to pick up an automobile part. While on that errand, the employee argued with the shopkeeper, and as the employee approached the desk to make the purchase, he stated "'[y]ou should be more careful the way you speak to customers'" and struck one of the shop's employees. 150 N.E.2d at 384-86. The appellate court found a triable issue as to whether the employee was acting in the scope of his employment because the defendant committed the tort while executing his employer's instruction "to purchase the part" and in so doing "[a]s a customer *** felt that he was entitled to some courtesy." *Id.* at 387. Likewise, in *Davila*, a driver was ferrying a passenger when a stranger interfered, causing a confrontation. *Davila*, 776 N.E.2d at 722. The Illinois Appellate Court found a triable issue of fact on whether the cab driver was acting within the scope of his employment because the altercation arose from interference with the driver's completion of the ride. *Id.* at 730. In *Bryant*, the court found a triable issue on the scope of employment for an intoxicated, off-duty store manager's attack on a toddler he pulled from the same car as a young person he caught vandalizing the exterior of the store. 619 N.E.2d at 553, 559. The court explained that the employer was liable for the employee's fulfillment of his duty to check on the store because "[t]he master who puts a servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant * * * goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on a third person." *Id.* (quoting *Metzler v. Layton*, 25 N.E.2d 60, 61 (Ill. 1939)). See also *Metzler*, 25 N.E.2d at 61-62 (triable issue for employee acting in accordance with his duty to protect property and business of employer).

10

The cases upon which Plaintiff relies are readily distinguishable because Plaintiff has not identified a duty that Lt. Johnson was attempting to fulfill by punching Plaintiff. See *Bonnem*, 150 N.E.2d at 387 (interference with purchase as a customer, the duty assigned); *Davila*, 776 N.E.2d at 730 (interference with customer transport, the duty assigned); *Bryant*, 619 N.E.2d at 559 (interference with store's care, the duty assigned). That Lt. Johnson did not commit a tort against a third party while being entrusted with the management and care of the employer's property reinforces this conclusion and counsels against applying the holding of *Bryant* to the facts of this case. See *Copeland*, 403 F.3d at 933–34 (distinguishing *Bryant* on this basis). The situation might be different if there were allegations that Captain Moore—Lt. Johnson's superior—had instructed Johnson to counsel or discipline Plaintiff after the meeting that proceeded the physical confrontation on March 28, 2018. If those facts were alleged, one *might* find a potential issue concerning Johnson's choice of using physical means to fulfill the duty imposed on him in carrying out his own superior's command. Even then, two punches to the face seems extreme and perhaps beyond the outer reaches of the law. But the facts alleged indicate no such duty that Johnson was carrying out; instead, it appears that he was acting to settle a personal score and not to do the business of the CFD. As the Court previously has suggested, Plaintiff's allegations, if true, suggest that Lt. Johnson was seriously out of line in throwing punches in the workplace and may face liability under both state and federal law for his conduct. Yet, Plaintiff's attempt to impose an indemnity obligation on the City, as Johnson's employer, falls short of the mark under § 228 of the Restatement and the Illinois case law.

In sum, this is the unusual case in which "no reasonable person could conclude from the evidence that an employee is acting within the course of employment," *Adames*, 909 N.E.2d at 759, because the act in question amounts to an "exceedingly marked and unusual" deviation from

11

acceptable workplace behavior. See *Pyne*, 543 N.E.2d at 1309. Cold cocking a subordinate with two punches to the face is beyond the pale of any conceivable understanding of the "conduct * * * [Lt. Johnson] was employed to perform," see *Bagent*, 862 N.E.2d at 994, even in the context of meting out discipline to a subordinate who was perceived to have acted out of line. In these circumstances, Illinois law calls for the entry of judgment as a matter of law, even on a motion to dismiss. Indeed, Judge Feinerman has applied the first criterion of § 228 in that manner twice in recent years. See *Byrne v. City of Chicago*, 447 F. Supp. 3d 707, 714 (N.D. Ill. 2019) (granting Rule 12(b)(6) motion and explaining that "Byrne cannot satisfy the first requirement because her factual allegations do not plausibly suggest the Schuler's shooting Byrne or encouraging her to shoot herself was conduct that CPD employed Schuler to perform"); *Blasberg v. City of Chicago*, 2018 WL 5717427, at *3 (N.D. Ill. Nov. 1, 2018) (granting Rule 12(b)(6) motion and explaining that "Blasberg cannot satisfy the first requirement because his factual allegations do not plausibly suggest that attempting to effectuate an arrest using a firearm was conduct of the kind that the Department of Aviation employed Jordan to perform"). The same analysis applies here: Plaintiff cannot state a plausible claim that Lt. Johnson was performing the type of conduct for which he was employed when he punched Plaintiff. And Plaintiff's failure to satisfy the first criterion alone is sufficient to dismiss the indemnification claim. *Elston*, 948 F.3d at 887.

### IV. Conclusion

Because no reasonable person could conclude from the allegations of the Second Amended Complaint that Lt. Johnson was acting within the scope of his employment when he punched Plaintiff, the Court grants Defendant City of Chicago's motion to dismiss Count IV [133] from the Second Amended Complaint [127] and dismisses the City of Chicago from the suit.

Dated: September 28, 2021

Robert M. Dow, Jr.
United States District Judge